IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| T. B., individually and by and through her guardian and adult next friend, Joy Greenwell | PLAINTIFF |
| V. | CAUSE NO. 1:10CV545-LG-JMR |
| LIBERTY MUTUAL INSURANCE COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

BEFORE THE COURT are the Motions for Summary Judgment [141, 144] filed by Plaintiff T. B. and Defendant State Farm Mutual Automobile Insurance Company. Also before the Court is a Motion to Strike [152] filed by T. B., which relates to a statement submitted in support of State Farm's Motion. Plaintiff T. B. claims uninsured motorist benefits under a policy issued to her aunt and uncle for injuries suffered in an automobile accident while she was a summer visitor to their home. The parties agree on the facts that are relevant to the Motions for Summary Judgment, and the only issue before the Court is whether T. B. was a resident of her aunt and uncle's home at the time of the accident, thereby entitling her to uninsured motorist coverage. Having reviewed the record in this case and the applicable law, the Court is of the opinion that T. B. has not established that she was a resident as contemplated by the policy and the law. For that reason, her Motion for Summary Judgment is denied, State Farm's Motion for Summary

Judgment is granted, and judgment is entered in this matter in favor of State Farm.

## FACTS

- At the time of the accident that is the basis of this case, T. B. was a fifteen-year-old high school student who lived with her mother, Joy Greenwell, and her stepfather, Julius Greenwell, in Indiana.

- Near the end of May, 2008, around Memorial Day, the Greenwells and T. B. went to Kentucky to visit Joy's mother for a family reunion. This was a regular trip that they had taken numerous times over the Memorial Day holiday. The Greenwells planned a trip to Tennessee after this trip, and T. B. was to be left at her grandmother's at least until they returned. T. B. had brought clothes and toiletries with her in anticipation of being gone from home for several weeks.

- Also visiting at that time was Phyllis Eubanks (now Graves), who is Joy's sister and T. B.'s aunt. Phyllis lived in George County, Mississippi, with her husband, Marshall. On past occasions, T. B. would go home with Phyllis after the family reunion and stay with her for a few weeks. In 2008, Joy discussed with Phyllis and her mother the possibility that T. B. would stay with Phyllis, but nothing definite was decided until after Joy left.

- Ultimately, it was decided that T. B. would return to Mississippi and stay with her aunt for an indefinite period of time, possibly until some time in July.[1]

- It was understood by the Greenwells and the Eubankses that T. B. would return to Indiana before the end of the summer and would attend her high school in Indiana. Her room at the Greenwells' home still contained all of the belongings that she had not packed for the trip.

- A few days after T. B. arrived in Mississippi, on May 30, 2008, she joined Marshall Eubanks's daughter and some other young people for a ride in a pickup truck owned and insured by former Defendant Elizabeth Wood and driven by her son, E. W. The pickup was involved in a one-car accident, which killed E. W. and seriously injured T. B.

- T. B. suffered from a skull injury, from which she will likely have some neurological impairment. Her medical specials are approximately $242,000.00.

- E. W.'s liability carrier was Geico, which interpled funds in the George County Chancery Court. T. B. was ultimately awarded $90,000.00 in liability

---

[1]The only disputed fact in this matter is whether T. B. was going to stay one week or several weeks. An affidavit from Marshall Eubanks, Phyllis Eubanks Graves's former husband, states his understanding that T. B. would only stay for a week. This affidavit is the subject of T. B.'s Motion to Strike. Because the Court is of the opinion that resolution of this dispute is not essential to its determination in this case, the affidavit has been disregarded, and the Motion will be denied as moot.

funds. Geico, Elizabeth Wood, and the Estate of E. W. have been dismissed from this lawsuit by agreement of the parties.

- T. B.'s parents purchased uninsured motorist coverage with Defendant Liberty Mutual, in the amount of $250,000.00. As of the date of this Opinion, Liberty Mutual and T. B. have reached a settlement of her claims, subject to chancery court approval.

- At the time of the accident, Marshall Eubanks had eight automobile insurance policies in effect with State Farm, which provided uninsured motorist coverage totaling $200,000.00. The policies provided coverage to relatives who primarily resided with Eubanks.

## ANALYSIS

Federal Rule of Civil Procedure 56(a) requires the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

The question presented by this case is whether the undisputed facts support T. B.'s claim against the Eubanks' uninsured motorist coverage. Where the facts

are not in dispute, the interpretation of the terms of an insurance policy are a question of law. *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866, 871 (Miss. 1995). The Court's interpretation, however, must be consistent with Mississippi law on the interpretation of insurance contracts and, in particular, with Mississippi's law on uninsured motorist coverage.

The Mississippi Uninsured Motor Vehicle Act requires automobile insurance policies to provide coverage "to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle . . . ." Miss. Code Ann. § 83-11-101 (1972). Conducting an expansive review of Mississippi law, the Fifth Circuit has concluded that restrictions on uninsured motorist coverage are construed strictly against the insurer, so as to promote "the remedial and humanitarian purposes of the Act." *Boatner v. Atlanta Specialty Ins. Co.*, 115 F.3d 1248, 1251 (5th Cir. 1997); *see also Aetna Cas. & Sur. Co. v. Williams*, 623 So 2d 1005, 1008-09 (Miss. 1993) ("[W]e consistently have held that the language of the Mississippi Uninsured Motorist Coverage Act must be construed liberally to provide coverage and strictly to avoid or preclude exceptions or exemptions from coverage."). To that end, where statutory provisions provide broader coverage than the policy terms, the statutory provisions become part of the policy. *Boatner* 115 F.3d at 1251.

The statutory definition of "insured" includes the named insured and "while resident of the same household, the spouse of any such named insured and relatives of either." § 83-11-103(b). The statute goes on to provide, "The definition of the

term 'insured' given in this section shall apply only to the uninsured motorist portion of the policy." *Id.* If the policy contains any other definition of "insured," the statutory definition should be substituted. *Dunnam v. State Farm Mut. Auto Ins. Co.*, 366 So. 2d 668, 671-72 (Miss. 1979). Here, Eubanks' policies provide uninsured motorist coverage to relatives who "primarily" reside with the named insured. Under Mississippi law interpreting the Uninsured Motorist Coverage Act, a person may have more than one residence. *McLeod v. Allstate Ins. Co.*, 789 So. 2d 806, 810 (Miss. 2001). Because inclusion of the term "primarily" would have the effect of narrowing that definition to only one residence–the *primary* one–it would have the effect of limiting coverage beyond what was intended by the statute. *See, e.g., Bolin v. Progressive Northwestern Ins. Co.*, No. 2:07CV0049AGF, 2009 WL 1010770 at *8 (E.D. Mo. Apr. 9, 2009) ("While a person may reside in two places for purposes of insurance coverage, a person cannot reside 'primarily' in two places.") For that reason, the Court will construe the issue of residence with reference to the statutory definition.

     Obviously, T. B. was a resident of her parents' home in Indiana, for several reasons. First, she was a minor who could not have established residence in a home apart from her parents. *Williams*, 623 So. 2d at 1010-11. Second, it was the place where her possessions, other than the clothing and toiletries she took to her aunt's house, were located. *Johnson*, 659 So. 2d at 875. Finally, it was clear that T. B., her parents, and her aunt all intended that T. B. would return to Indiana by the

end of July to resume her life and her education in Indiana. *McLeod*, 789 So. 2d 812-13. The question is whether she had *another* residence with her aunt in Mississippi.

The term "resident," according to the Mississippi Supreme Court, "has no technical or fixed meaning." *Johnson*, 659 So. 2d at 872. Its construction "depends on the context, subject matter, and purpose designed to be accomplished by its use." *Id*. It is, however, "generally understood to mean one having more than a mere physical presence, and . . . the transient visit of a person for a time to a place does not make him a resident while there." *Id*. (quoting 77 C.J.S. *Resident* § (1952)). Thus, the term "imports a fixed abode for the time being, as contradistinguished from a place of temporary abode . . . ." *Id*. On the other hand, it "may be used in the strict primary sense of one actually living in a place for a time, irrespective of domicile, and it may refer to a temporary sojourner . . . ." *Id*. In *Johnson*, the trial court had granted summary judgment to the insurer. Using this framework of analysis, the Mississippi Supreme Court reversed the trial court and found that there was coverage for adult children who were staying temporarily in their parents' homes, even though the visit was intended to end once the children found a place to live in Arkansas and moved there. The court reasoned:

> Applying these factors to the Johnsons' case, it may first be noted that Ron and Dee intended to stay with their respective parents until such time as they could move despite the fact that they had a plan and an obligation to be residing elsewhere later that month. It could also be presumed that had something unexpected happened which would have delayed or terminated Ron and Dee's plans to move

> that they would have continued to "reside" with their respective parents until another opportunity arose enabling them to reside elsewhere.
>
> After their departure from Tennessee on June 1, Ron and Dee intended to subsequently establish residence in a particular house in Little Rock, and had taken some steps towards establishing it, including discussing renting month-to-month with the owner and applying for phone service. However, at the time of the accident, the Johnsons' possessions were not in Little Rock, nor had Ron and Dee spent any time at the intended residence. Rather, the possessions, as well as the Johnsons themselves, were indefinitely in Columbus and Plantersville with the respective parents. Therefore, at the time of the accident, we find that they were simultaneously residents of Arkansas and Mississippi while *residing* with their respective parents, albeit temporarily.

*Johnson*, 659 So. 2d at 875. One additional factor influencing the court's decision was the likelihood that the parents of the couple intended that their children would be covered under their policies during their temporary stay. *Id*.

The parties have not cited, and the Court has not found, a Mississippi case with the same circumstances as found here. There are several cases in which the term "resides" or "resident" have been defined that involve children. In *Johnson*, discussed above, the court found that the adult children were residents of their parents' home, despite the fact that their stay was temporary. Other Mississippi cases have been based on the location of the parties, rather than the duration of the stay. For example, the Court has found that factual issues precluded summary judgment where a twenty year-old daughter had moved out of town, but according to statements from her father and brother, decided at a time shortly before the fatal accident in question to return to her father's house. *McLeod*, 789 So. 2d at 813. In

contrast, the court reversed a lower court's grant of summary judgment to the fully emancipated twenty-eight year-old son who was living in his parents' garage apartment. *Merrimack Mutual Fire Ins. Co. v. McDill*, 674 So. 2d 4, 9-10 (Miss. 1996). Recognizing that the crucial issue was the intention of the parties, the court ruled that the relevant facts were disputed, and the case should be remanded. *Id*. Later, the court ruled that a daughter who lived with her children in a house over 100 yards from her father's was not a resident relative for purposes of insurance coverage. *Mercer v. Progressive Gulf Ins. Co.*, 885 So. 2d 61, 66 (Miss. 2004).

The Mississippi Supreme Court has ruled both for and against children who have argued that they were residents of their parents' households. The relationship of niece/nephew to aunt/uncle being more attenuated, these cases are not directly on point with T. B.'s circumstances. The Mississippi Supreme Court has cautioned against reliance on the holdings of other jurisdictions, particularly where they are construing statutes different from Mississippi's. *Harris v. Magee*, 573 So. 2d 646, (Miss. 1990) (citing *Wickline v. U.S. Fidelity & Guar. Co.*, 530 So. 2d 708, 714 (Miss. 1988)), both overruled on other grounds by *Meyers v. American States Ins. Co.*, 914 So. 2d 669, 676 (Miss. 2005). The court has, however, considered the law of other jurisdictions when determining residence. *Williams*, 623 So. 2d at 1010. Cases applying aspects of uninsured motorist law to fact situations not yet addressed by Mississippi courts have also reviewed foreign law. *See, e.g., U. S. Fidelity & Guar. Co. v. John Deere Ins. Co.*, 830 So. 2d 1145, 1149 (Miss. 2003) ("other insurance"

clause); *Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658, 664 (Miss. 1994) (reduction clause); *Medders v. U.S. Fidelity and Guar. Co.*, 623 So. 2d 979, 992 (Miss. 1993) ("legally entitled to recover damages"); *see also Allstate Ins. Co. v. Lewis*, 918 F. Supp. 168, 172 (S.D. Miss. 1995) (reasoning that Mississippi would follow the precedent of a case from the Southern District of Indiana "which appears to be the only reported case involving the exact same policy and clause at issue."). Given the absence of precedent dealing with the situation at hand, this Court will also review cases from other jurisdictions involving the relationship of niece/nephew to aunt/uncle and reviewing the nature of the stay, rather than the location of the parties.

In a declaratory judgment action in the Eastern District of Pennsylvania, the court found no coverage in a case where a niece and her boyfriend were staying with her aunt while waiting to move into an apartment she had already leased. *Allstate Ins. Co. v. Robichaw*, No. 87-8146, 1988 WL 79852 at *3 (E. D. Pa. Aug. 1, 1988), *aff'd*, 870 F.2d 650 (3rd Cir. 1989). In fact, the boyfriend moved their belongings into the apartment while the niece was still in the hospital, and she went to the apartment when she was released. *Id*. at *1. The relevant portion of Pennsylvania's Motor Vehicle Financial Responsibility Law defined "insured" to include a relative "if residing in the household of the named insured." *Id*. at *2 (quoting 75 Pa. Cons. Stat. § 1702). Relying on Pennsylvania precedent, the court concluded that the controlling factor was intent. *Robichaw*, 1988 WL 79852 at *2

(citing *Boswell v. South Carolina Ins. Co.*, 353 Pa. Super. 108, 116, 509 A.2d 358, 362 (1986)).  Finding that neither the niece nor her aunt intended her stay to last "for the indefinite future," the court found that she was not a resident.  *Id.* at *2-3.  In doing so, the court rejected the argument that mere physical presence satisfied the test for residence, stating, "I am confident the legislature never intended that a relative who was just passing through and stayed overnight or as a week-end guest would qualify as an insured under the host's automobile policy."  *Id.* at *3.

In an appeal from a non-jury trial, the Tennessee Court of Appeals affirmed the trial court's finding that a nephew living temporarily with his uncle was not a resident.  *Allstate Ins. Co. v. Barnes*, 896 S.W.2d 565, 571 (Tenn. Ct. App. 1995).  There, the policy covered "any resident of the named insured's household."  *Id.* at 567.  The evidence showed that the uncle took his nephew in "to see if he could straighten himself out," with the intention that he would stay for a short period of time and then find an apartment.  *Id.* at 568.  The nephew was not allowed to stay in a bedroom, but slept on a couch in the basement.  After about a month, and despite being told that he was not to drive any of his uncle's vehicles, the nephew took a van and had an accident.  The appellate court determined that there were three parts to their analysis of the case –bodily presence, in the household, with "an intention to continue to dwell therein."  *Id.* at 568-69.  While it was clear that the nephew had a "bodily presence" in the home,  the court found that he was not a member of the household, and he had no intention to continue to dwell at his uncle's

home. *Id.* at 569. Moreover, the court concluded that it should analyze the intent of both parties–the uncle and the nephew–to determine residence. Since the uncle testified that he had told his nephew to be out of the house on a date that was a few weeks from the time that the accident occurred, the court concluded that his presence was "transient," and he was not a resident. *Id.* at 570.

After a Florida jury found that a nephew who was living in his uncle's house was covered under the uncle's policy, the insurer moved for a new trial, which was granted. *Sembric v. Allstate Ins. Co.*, 434 So. 2d 963, 964 (Fla. Dist. Ct. App. 1983). The nephew appealed, and the Florida appellate court affirmed the trial judge's decision. In that case, it was the uncle who was not a resident of the household, as he only visited it a few weeks every year. He spent the remainder of the year working and living in Ohio, where his vehicles were registered and licensed. He owned the Florida home in anticipation of retiring there. Finding that the evidence "unquestionably establishes that the nephew and the uncle do not live together on a permanent basis," the court remanded the case with directions to the trial court to enter judgment on behalf of the insurer. *Id*.

In a case from Wisconsin, the appellate court ruled that a niece who came to her uncle and aunt's home for a few weeks to care for their children, but who intended to leave by the time school started, was not a resident. *Pamperin v. Milwaukee Mut. Ins. Co.*, 197 N.W.2d 783, 789 (Wis. 1972). In this case, one of her uncle's children was hospitalized, requiring the parents to be present on a twenty-

four hour basis.  When the grandmother, who had been caring for the other children, became ill, the twenty year-old niece, who was out of college for the summer, came to the home to help.  During that time, she was mostly at her uncle's home, but returned often to her mother's home for clothing, and slept at her mother's home when the aunt or the uncle was able to come home from the hospital.  Although there was no definite date for her departure, she planned to leave in time to attend college during the fall semester.  197 N.W.2d at 785-86.  The jury returned a finding that she was a resident, and the insurer appealed.  Noting that duration is an important factor in determining residence, the appellate court reasoned, "[T]he subjective or declared intent of the individual, while a fact to be considered, is not controlling, but the intended duration oftentimes must be determined only after a thorough examination of all the relevant facts and circumstances surrounding the relationship." *Id.* at 788.  Thus, the court held, it must also review the degree of intimacy in the relationship and whether "the parties would consider the relationship 'in contracting about such matters as insurance or in their conduct in reliance thereon.'" *Id.*  Recognizing that the niece did not move a significant amount of her possessions to her uncle's home, that all of the parties agreed that her stay was limited in time by the commencement of the fall semester, and that the circumstances did not suggest that the parties would consider the situation in contracting for insurance, the court held that the trial court erred in not directing a verdict for the insurer.  *Id.* at 789.

In contrast, a Connecticut appellate court affirmed an arbitration award to a niece who had moved into her aunt's home along with her mother, after her mother had been attacked and injured in her home by a co-worker. *Lawrence v. New Hampshire Ins. Co.*, 616 A.2d 806, 811 (Conn. App. Ct. 1992). The evidence showed that the women moved most of their personal belongings into the aunt's home, and they had no intention of returning to their old residence. They stayed in their aunt's home for about six months, after which they returned to their old residence for their furniture and then moved out of state. *Id.* at 808. The policy in question provided coverage to a relative who was "a resident of your household." Finding that the niece and her mother intended to live with the aunt permanently, that the niece had frequent contact with her aunt's family, that she had moved most of her personal belongings there and got her mail at her aunt's address, the court affirmed the arbitrators' decision that she was a resident of the home.

In a Missouri case, the court held that a nephew was covered under his uncle's policy when he was injured during a summer visit. *Pruitt v. Farmers Ins. Co., Inc.*, 950 S.W.2d 659, 665 (Mo. Ct. App. 1997). There, the seventeen year-old nephew was sent from Texas ostensibly to help haul hay, but actually to separate him from his girlfriend. *Id.* at 661. His father had purchased a round-trip ticket, but the evidence showed that the date for the return was picked at random. Apparently, there had been some discussion among the adults that the nephew might stay permanently, although his intent was to return. *Id.* The policy defined

14

an insured as a family member "who is a resident of (the named insured's) household." *Id*. The trial court had granted summary judgment to the insurer, finding that the nephew was not a resident. The appellate court reversed, holding that the fact that an indefinite stay was possible created an issue on whether the nephew was a resident, and it remanded the case.

A case from South Carolina reversed a jury verdict in favor of the insurer and found that a nephew was a resident of his uncle's household where he lived there without restriction as to use of the house, contributed rent only when he was employed, and had no present plans to move. *Buddin v. Nationwide Mut. Ins. Co.*, 157 S.E.2d 633, 636-37 (S.C. 1967). The house in which they lived had been the nephew's childhood home, and his uncle had bought it after the death of the nephew's father. When the nephew left college and was unemployed, his uncle allowed him to move in. The policy covered "any relative resident of the same household. *Id*. at 635. The court held, "the only reasonable inference to be drawn from the testimony" was that the nephew was a resident of his uncle's home. *Id*. at 637.

In making the determination cited above, the South Carolina court relied on a California case that affirmed the trial court's finding that a nephew who had a separate apartment, but often stayed with his aunt and uncle, was a resident of their home, for purposes of coverage. *Hardware Mut. Cas. Co. v. Home Indem. Co.*, 50 Cal Rptr. 508, 514 (Cal. Dist. Ct. App. 1966). In this case, the nephew had lived with his aunt and uncle for two years while he was attending school. After being

discharged from the Navy, he returned to live with them for a few months, after which he got an apartment with his cousin. His cousin testified that he was rarely at the apartment, spending most of his time at his aunt and uncle's home. After the accident that generated the lawsuit, the uncle picked up the nephew at the hospital and took him to the uncle's home, where he stayed for several days. The court defined resident as "one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently." *Id.* at 514. Under that definition, the court concluded that the nephew was a resident of his uncle's home. *Id.*

It is difficult to articulate a general rule that explains the rulings in these cases, except to say that, in each of them, the courts looked to the intent of the parties. Obviously, the parties have to have actually formed a *household*; thus, there was no residence where the uncle did not actually live in the same house as his nephew. *Sembric*, 443 So. 2d at 964. Similarly, where the uncle grudgingly took in his nephew for a short period of time "to straighten him out," and the nephew was compelled to sleep on a couch in the basement, there was no household. *Barnes*, 896 S.W.2d at 569-70. Where the duration of the stay is temporally limited by another event, such as signing a lease for a new apartment, the niece was not a resident of her aunt's home, but merely a visitor. *Robichaw*, 1988 WL 79852 at *3. Where the parties intended for the stay to end when the niece went back to college, she was also deemed to be a visitor. *Pamperin*, 197 N.W.2d at 789. *Pamperin* also

recognized that, under the circumstances of the visit, it was not likely that the aunt and uncle would have considered it when contracting for insurance. *Id*.

In cases where the niece or nephew was found to be a resident, the parties had to have intended for the stay to be either unlimited or undefined. Where the niece and her mother obviously intended to quit their original residence for good after the mother was assaulted there, they were deemed to be residents of the aunt's home. *Lawrence*, 616 A.2d at 811. An unemployed nephew living in his childhood home with his uncle, who had no plans to move, was also a resident. *Buddin*, 157 S.E.2d at 637. Another nephew who had lived off and on with his aunt and uncle for years and who, although he had an apartment, spent most of his time at his relatives' house, was also a resident. *Hardware*, 50 Cal. Rptr. at 514.

The case most similar to this one involved the seventeen year-old from Texas was sent to his uncle's home in Missouri to separate him from his girlfriend. *Pruitt*, 950 S.W.2d at 665. Although the nephew's intent was to return to Texas for school at the end of the summer, and although his father had purchased a round-trip ticket, the adults had discussed the possibility of his remaining in Missouri permanently. The facts of *Pruitt* do not suggest a finding of residence as strongly as some of the others cited above; although it is not discussed in the opinion, the nephew's age may have been a factor in the decision.

Likewise, T. B.'s age is a factor that would suggest that her residence would be wherever the adult authorities in her life placed her. The Mississippi Supreme

17

Court has construed the term broadly in the context of coverage for minors, "based on a perception that the legislature intended to provide maximum protection for minor children, who, we noted, are unable to establish their own domicile." *Johnson*, 659 So. 2d at 874.  The Court, nonetheless, is of the opinion that the other factors in this case suggest that the parties never intended for T. B.'s visit to be of such a duration as to support a finding that she was a resident of her aunt and uncle's home.  Her trip to Mississippi was an annual tradition that always had a finite beginning and end.  There was nothing about the circumstances of this trip to suggest that her presence was not transitory.  Most of her belongings were left at her parents' house, and it is clear that all of the adults involved understood that she would be returning home in a matter of weeks.  Moreover, while the parents in the *Johnson* case might have intended that their children would be covered under their automotive policies, it is much less likely that T. B.'s aunt and uncle gave her visit any consideration when contracting for uninsured motorist coverage.  For all of these reasons, the Court finds that T. B. was not a resident of the Eubanks' home so as to be covered under their uninsured motorist policy.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [141] is **DENIED.**  State Farm's Motion for Summary Judgment [144] is **GRANTED**.  Plaintiff's Motion to Strike [152] is **DENIED** as moot.

**IT IS FURTHER ORDERED AND ADJUDGED** that this action is hereby **DISMISSED WITH PREJUDICE as to Defendant State Farm.**

**SO ORDERED AND ADJUDGED** this the 17th day of August, 2012.

                                           s/ *Louis Guirola, Jr.*
                                           LOUIS GUIROLA, JR.
                                           CHIEF U.S. DISTRICT JUDGE